IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**OLGA E. HERNANDEZ,**

vs.                                                                                                      **Civil No. 03-0455 RLP**

**JO ANNE B. BARNHART, Commissioner**
of Social Security,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on Plaintiff's Motion to Reverse Administrative Agency Decision with directions to award benefits, or in the alternative to Remand for additional proceedings. (Docket No.8). Having reviewed the record in this case and for the reasons set forth in this Memorandum Opinion and Order, the court grants Plaintiff's motion and remands for additional proceedings.

**I.    Procedural Background**

Plaintiff filed an application for Supplemental Security Income on February 8, 2001, alleging disability stemming from an injury to her left arm. Her application was initially denied on September 24, 2001, and again on reconsideration on October 25, 2001. A hearing before an Administrative Law Judge ("ALJ") was held on April 8, 2002. In a decision dated August 2, 2002, the ALJ found that Plaintiff was not disabled and therefore ineligible for benefits. Plaintiff requested review of this decision which was denied on February 24, 2003 by the Appeals Council of the Social Security Administration. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

**II.    Factual Background**

Plaintiff was born on June 8, 1960. (Tr. 81). She has a 5th grade education and does not speak or write English. (Tr. 100, 108).

On September 7, 2000, Plaintiff was stuck by an automobile while crossing an intersection. She sustained an open fracture/dislocation of her left ulna (forearm) which was surgically repaired. (Tr. 121, 247). She continued to complain of pain before and after attempts at aggressive physical therapy prescribed by her treating surgeon, Frank Bryant, M.D. (Tr. 171-172). As of June 1, 2001, Dr. Bryant felt that she had developed reflex sympathetic dystrophy[1] ("RSD" herein), and referred her to specialists in rehabilitation and occupational medicine for additional treatment. (Tr. 170).

Plaintiff was evaluated by Brian Delahoussaye, M.D., on June 7, 2001. Dr. Delahoussaye is the medical director of Rehabilitation and Occupational Medicine ("R&OM" herein). He documented painful and restricted range of motion of Plaintiff's left shoulder and wrist, that she held her arm flexed at the elbow with her fingers flexed, and had pain on passive flexion of the fingers. He stated she suffered from allodynia[2] and diagnosed RSD with shoulder-hand presentation. (Tr. 199-202).

On June 20, 2001, Plaintiff was evaluated by F.D. Ashdown, M.D.[3], at the request of the Disability Determination Unit. (Tr. 149-151). On physical examination he found no muscle spasm, deformity, effusion, significant atrophy, ataxia, tremor, spasticity, reflex or sensory changes. He felt that she did not cooperate with his examination, refusing to attempt most range of motion maneuvers and postures, and made complaints of pain and limitation involving her lower extremities, which were

---

[1]Reflex sympathetic dystrophy is defined by "a series of changes caused by the sympathetic nervous system, marked by pallor or rubor, pain, sweating, edema, or osteoporosis, following muscle sprain, bone fracture, or injury to nerves or blood vessels." *Dorland's Illustrated Medical Dictionary* 560 (29th Ed.2000).

[2]"Condition in which ordinarily nonpainful stimuli evoke pain." *Stedmans Medical Dictionary* (27th ed. 2000).

[3]Dr. Ashdown specializes in internal medicine.  www.gcrmc.org/gc.nsf/View/ Physicians BySpecialty

not supported by her medical history, medical records or exam. Dr. Ashdown felt that Plaintiff's pain complaints were exaggerated, inconsistent and indicative a malingering. Nevertheless, based on residual tenderness of her left arm, he found that her ability to use her left hand and arm to perform work related activities was impaired. He did not quantify this impairment.

Plaintiff was treated conservatively by Dr. Delahoussaye and Dr. Edwin Kennedy who is also with R&OM, from June through September 2001. Treatment modalities included medication[4], use of a TENS unit and physical therapy. (Tr. 191, 198, 162, 194). By September 5, 2001, Dr. Kennedy noted Plaintiff's continued complaints of pain with movement. Objective signs included painful firmness of the supraspinatus muscle and clawing/contracting of the left hand. Dr. Kennedy prepared a form stating that Plaintiff was capable of performing sedentary work that did not require use of the left arm or hand, and referred her to the Texas Tech Medical Center ("TTMC"herein) for further evaluation and treatment. (Tr. 160, 162).

Plaintiff was evaluated by Dr. Jose Villarreal, a board certified anesthesiologist at TTMC on September 10, 2001. (Tr. 161, 203-204). On physical examination, Dr. Villarreal recorded marked hyperalgesia[5], allodynia and hyperpathia[6] from the left shoulder down to the fingertips, contracture of the right hand, increased pain upon straightening of her fingers, and marked trapezius hyperactivity with spasms. He diagnosed severe chronic regional pain syndrome, another term for RDS, with myofascial neuropathic components. Dr. Villarreal added Elavil to Plaintiff's medications and

---

[4]Neurontin, Zanaflex, Ibuprofen.

[5]"Extreme sensitivity to painful stimuli." *Stedmans Medical Dictionary* (27th ed. 2000).

[6]"Exaggerated subjective response to painful stimuli, with a continuing sensation of pain after the stimulation has ceased."*Stedmans Medical Dictionary* (27th ed. 2000).

recommended stellate ganglion block. The block was performed, but did not relieve any of Plaintiff's pain complaints. (Tr. 214). As of October 29, 2001, Plaintiff had some pain relief from medication, but still complained of considerable pain. Dr. Villarreal added Hydrocodone and began discussion of use of spinal cord stimulation to address her pain. On January 7, 2002, Dr. Villarreal documented significant allodynia and hyperalgesia in the left arm with some myofascial tenderness along scapula and rhomboid. In addition, Plaintiff continued to hold her hand in a guarded position. (Tr. 211). Dr. Villarreal's last examination of record occurred on March 4, 2002, one month before Plaintiff's administrative hearing. Based on her chronic regional pain syndrome, he felt that should would never be able to use her left upper extremity effectively. (Tr. 168, 207).

### III.    The ALJ's decision.

The ALJ found that Plaintiff had a severe impairment, consisting of her status post grade I ulnar shaft fracture, that this impairment did not meet or equal the severity of a listed impairment, that Plaintiff was not entirely credible, that she retained the residual functional capacity for sedentary, unskilled work, that she could not return to her past relevant work which was heavy and semi-skilled in nature, but that application of the Medical Vocational Guidelines, Rule 201.23, resulted in a finding of not disabled.

In addressing the evidence, the ALJ relied solely on Dr. Ashdown's evaluation, and did not discuss, or even mention, the evaluations and medical opinions of her four treating physicians.

### IV.    Scope of Review

Judicial review by this court is limited to determining (1) whether the Commissioner applied the proper legal standards and (2) whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F. 2d 1495, 1497-1498 (10th

Cir. 1992). If the Commissioner's factual findings are supported by substantial evidence, they must be given conclusive effect. 42 U.S.C. §405(g). Substantial evidence is that which a reasonable person might find sufficient to support a particular conclusion. *Richardson v. Perales*, 402 U.S. 389, 401-402 (1971). Further, evidence must be more than a scintilla, *Id*., at 403, but may be less than a preponderance. *Flint v. Sullivan*, 951 F.2d 264, 266 (10th Cir. 1991).

**V.     Discussion**

The ALJ failed to apply correct legal principles in the evaluation of the medical evidence. The ALJ ignored or disregarded the opinions of Plaintiff's treating physicians, referring exclusively to the evaluation performed by Dr. Ashdown. *Frey v. Bowen*, 816 F.2d, 508, 515 (10th Cir. 1987) ("findings of a nontreating physician based upon limited contact and examination are of suspect reliability").

The opinions of treating physicians are entitled  specific and well-delineated consideration pursuant to applicable Social Security regulations and case law.  When an opinion of a treating physician is presented, the ALJ must determine whether that opinion is entitled to controlling weight, that is, if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and consistent with other evidence of record. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p, 1996 WL 374188, at *2. Even where not controlling, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in §20 C.F.R. 416.927.[7]

---

[7]The factors to be considered are:  (1) the length of the treatment relationship and the frequency of examination;  (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;  (3) the degree to which the physician's opinion is supported by relevant evidence;  (4) consistency between the opinion and the record as a whole;  (5) whether or not the physician is a specialist in the area upon which an opinion is rendered;  and (6) other factors brought to

In this case, the ALJ obviously did not give the opinions of Drs. Bryant, Delahoussaye, Kennedy or Villarreal controlling weight, or in fact, any weight. Further, she did not articulate any reason for this shortcoming. If an ALJ rejects the opinion of a treating physician completely, she must then give " 'specific, legitimate reasons' " for doing so. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (*quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)). I cannot presume the ALJ applied the correct legal standards in considering the opinions of Plaintiff's treating physicians. The decision of the Commissioner must be reversed and remanded because no meaningful review of the ALJ's determination can be made absent findings explaining the weight assigned to the treating physicians' opinions. *See, e.g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001). On remand, the Commissioner shall evaluate the opinions of all treating physicians in accordance with §20 C.F.R. 416.927.

RSD, the medical condition diagnosed by all of Plaintiff's treating physicians, is addressed in a new Social Security Ruling, SSR03-2p, "Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome, 2003 WL 22399117. As noted in that ruling, the syndrome is characterized by reported pain that "is out of proportion to the severity of the injury sustained. . ." Id at *1. On remand, the Commissioner is instructed to consider the provisions of this ruling in the evaluation of Plaintiff's claim.

Finally, Plaintiff will be allowed to submit updated medical records for consideration.

## VI. Conclusion

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand [Docket No.

---

the ALJ's attention which tend to support or contradict the opinion." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001). (citation omitted).

8] is granted, and the decision of the Commissioner denying Plaintiff's claims for Disability Insurance Benefits and Supplemental Security Income is reversed, and this matter is remanded to the Commissioner of Social security for additional proceedings consistent with this Memorandum Opinion and Order.

_____
**Richard L. Puglisi**
**United States Magistrate Judge**
**(sitting by designation)**
